1    Erin Ronstadt, SBN 028362
     Kristin Cox, SBN 030240
2    CALDWELL & OBER, P.L.L.C.
     1940 E. Camelback Road, Suite 150
3    (602) 277-1745
     (602) 761-4443 Fax
4    erin@caldwellober.com
     kristin@caldwellober.com
5
     Attorneys for Plaintiff
6

7              IN THE UNITED STATES DISTRICT COURT

8                 FOR THE DISTRICT OF ARIZONA

9    Rick Joseph Rodrigues, a single man,          **No.**

10                                    Plaintiff,

11   v.                                            **COMPLAINT**

12   USAA Comprehensive Welfare Benefits
     Plan, Number 519, an ERISA benefits plan;
13   Liberty Life Assurance Company of
     Boston, a plan fiduciary; USAA's
14   Executive Vice President, People Services,
     a plan administrator; and United Services
15   Automobile Association, a plan sponsor,

16                                    Defendants.

17
          For his claims against Defendants USAA Comprehensive Welfare Benefits Plan,
18
     Number 519 (the "Plan"), Liberty Life Assurance Company of Boston ("Liberty"),
19
     USAA's Executive Vice President of People Services ("Plan Administrator"), and United
20
     Services Automobile Association ("USAA") (collectively "Defendants"), Plaintiff Rick
21
     Joseph Rodrigues ("Rodrigues") alleges as follows:
22
                          **JURISDICTION AND VENUE**
23
          1.     This action arises under the Employee Retirement Income Security Act of
24
     1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").
25
          2.     This Court has jurisdiction over the subject matter of this action under
26
     ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory
27
     judgments).
28

3. Venue is proper in this Court under ERISA, 29 § 1132(e)(1) and 28 U.S.C. § 1391(b).

4. Rodrigues is and was at all relevant times a resident of Maricopa County, Arizona.

5. USAA, the Plan, and the Plan Administrator have their principal place of business in the State of Texas.

6. Liberty has its principal place of business in the State of Massachusetts.

7. Defendants are licensed and authorized to do business in Maricopa County, Arizona, and/or reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

8. Rodrigues satisfied all of the jurisdictional prerequisites to filing this lawsuit, and his claims are timely before this Court.

## PARTIES

9. All previous paragraphs are incorporated by reference.

10. The Plan is a purported ERISA benefit plan established and maintained by USAA for coordinating and administering welfare benefits for its eligible employees.

11. The Plan is a welfare benefit plan that offers group short-term disability ("STD") benefits and long-term disability ("LTD") benefits. The Plan is comprised of 'Constituent Benefits Programs.' As two of these Constituent Benefits Programs, USAA established and maintains the USAA Short-Term Disability Benefit Plan (the "STD Program") and USAA Employee Benefit Association Group Long-Term Disability Plan (the "LTD Program") to help ease the financial impact a long-term illness or injury can have on an employee's life.

12. For disabilities that occur after December 31, 1996, USAA provides benefits under the LTD Program according to an insurance policy issued and fully insured by Liberty, identified as Policy No. GF3-891-419734-01 (the "Policy").

CALDWELL, & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

-2-

13.     The STD Program is self insured by USAA's general assets, and STD claims are administered by Liberty.

14.     USAA administered the Plan in Arizona to its employees, including Rodrigues. USAA is the Plan Sponsor and Employer.

15.     The Plan Administrator is the "administrator" and the "named fiduciary" with respect to the general administration of the Plan.

16.     The Plan Administrator may appoint other Plan Administrators. In the absence of an appointment, the Executive Vice President of People Services, or Human Resources, shall be the Plan Administrator.

17.     The Plan Administrator has the power to delegate his authority, to appoint Third Party Administrators ("TPAs"), and to grant or deny benefits under the Plan and Constituent Benefits Programs.

18.     On information and belief, Liberty administered claims for USAA under the Plan as a TPA and/or as the Plan Administrator.

19.     Rodrigues was an Eligible Employee, Participant, and beneficiary entitled to LTD benefits under the Plan. Rodrigues was considered Class 1 under the Plan.

20.     USAA and/or the Plan Administrator exercised and reserved authority to make final decisions regarding the administration and payment of disability benefits for the Plan. Liberty acted as USAA's agent to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan. Accordingly, Rodrigues is informed and believes that USAA and Liberty are either a "named fiduciary" of the Plan, pursuant to 29 USC § 1133(2); and/or a  "deemed fiduciary" pursuant to 29 USC § 1002 (21)(A); and/or a "designated fiduciary" pursuant to 29 USC § 1105(c)(1)(B).

21.     Liberty had actual or apparent authority to act as a fiduciary on behalf of the Plan.

-3-

22.     Liberty's third-party vendors had actual or apparent authority to act as fiduciaries on behalf of the Plan and administered the Plan in providing services to Defendants.

23.     On information and belief, USAA has not properly conferred Liberty with the discretionary authority to interpret the Plan or to make eligibility determinations regarding the Plan.

24.     Liberty acted under a structural conflict of interest in both administering and paying claims under the Plan.

25.     Rodrigues is entitled to *de novo* review of his claims.

## GENERAL ALLEGATIONS

26.     All previous paragraphs are incorporated by reference.

27.     USAA provided certain USAA employees with STD and LTD insurance pursuant to the Plan and other documents comprising the Plan.

28.     Rodrigues was an employee of USAA as of 2002 and remained a covered individual under the Plan eligible for LTD benefits.

29.     Rodrigues graduated from Arizona State University in 1983 with a B.S. in Finance.

30.     Rodrigues began working in insurance soon after graduating from Arizona State University.

31.     Rodrigues held an active Arizona Insurance License from as early as December 11, 1997.

32.     Rodrigues first began working for USAA in April 2002 as a Policy Service Support Representative.

33.     Rodrigues was promoted in June 2003 to a Senior Policy Support Representative and, in 2004, transitioned to the role of Member Relationship Specialist I.

-4-

34.     As of his last day worked on August 25, 2011, Rodrigues worked as a Member Relationship Specialist I for USAA in the Property and Casualty ("P&C") department.

35.     Rodrigues mostly sold P&C insurance products for USAA and served as a 'peer coach' to assist his team in meeting performance objectives. His own occupation as a Member Relationship Specialist I involved working with USAA customers to identify and close coverage gaps, which required building rapport with customers, providing specialized guidance on coverage, and handling complex underwriting situations. As a coach, he furthered the development of his peers in areas such as P&C proficiency, member service, and file reviews.

36.     To perform the material and substantial duties of his own occupation, Rodrigues was required to exhibit in-depth analytical capabilities; critical thinking skills; strong reading, writing and presentation skills; active listening abilities; customer service skills; ongoing education on P&C policies and issues; and a high degree of professionalism.

37.     Rodrigues received annual performance reviews from USAA, including but not limited to years 2002-2010.

38.     On more than one occasion in the performance reviews, USAA supervisors mentioned Rodrigues' work habits and noted his efforts to make a positive contribution to USAA.

39.     On more than one occasion in the performance reviews, Rodrigues was noted to go above and beyond for USAA customers.

40.     In more than one performance review, Rodrigues was considered by his supervisors to be a strong asset to USAA.

41.     Rodrigues loved his job with USAA.

42.     As part of his continued employment with USAA, Rodrigues agreed "to live USAA's core values."

-5-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

43.     After a longstanding battle with a degenerative medical condition, Rodrigues' last day worked was August 25, 2011. He went off of work due to his worsening symptoms, medications, and need for medical treatment as a result of his medical condition and the complications from that condition.

44.     After a seven-day waiting period, Rodrigues began receiving STD benefits on or about September 2, 2011. Under the terms of the Plan, if he remained eligible, Rodrigues would have received STD benefits until February 21, 2012 and LTD benefits thereafter until at least March 17, 2025.

45.     As of his last day worked, Rodrigues was receiving experimental medical treatment, and it was unknown whether it would be successful. He was suffering significant side effects from that treatment.

46.     On October 26, 2011, Rodrigues spoke with Liberty's Disability Claim Manager ("DCM") Dirk Mathis on the status of his treatment. He explained to Mr. Mathis that the treatment had been unsuccessful and was being discontinued, and that he was experiencing severe side effects from the treatment, such as fatigue and flu-like symptoms, which were debilitating. Rodrigues explained he would need to pursue LTD benefits, and that USAA had decided to sever his employment. Liberty entitled the call with Rodrigues as "Seeking LTD."

47.     On November 17, 2011, Mr. Mathis called Rodrigues and left a voice message, explaining that if Rodrigues did not provide additional medical records by December 31, 2011, "bottom line was that" his STD claim would be closed effective January 1, 2012 for failure to provide ongoing proof. Because Rodrigues was not returning to work and had no return to work date, Liberty sent his claim to a LTD claim manager, "escalat[ing Rodrigues' claim] to severe case management."

48.     Rodrigues submitted medical records and complied with all of Liberty's requests for the consideration of his STD and LTD claims.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

49.     The STD and LTD appeals processes are different, at least in part because of the difference in funding. The STD benefits are self-insured by USAA. For STD benefits that are denied, a participant first appeals the denial to Liberty. If Liberty upholds the denial, then the participant must submit a second appeal to USAA directly. USAA's decision on the second appeal is considered the final decision, entitling a participant to seek further relief only in federal court. For LTD benefits that are denied, a participant must appeal to Liberty and has no further appeals following Liberty's final denial of that appeal. Liberty's timeline for making a determination depends on whether the LTD denial is the denial of an initial claim for benefits or a termination of ongoing LTD benefits.

50.     On January 31, 2012, Liberty acknowledged that Rodrigues' medical treatment "was known to have severe side effects," and that Rodrigues was "determined to be a non-responder" to the treatment. However, Liberty denied both ongoing STD benefits and the LTD claim in letters dated February 1, 2012 (the "First STD Denial" and the "Initial LTD Claim Denial," collectively the "Initial Denials"); the same DCM, Erika Cruz, authored the Initial Denials of Rodrigues' ongoing STD benefits and LTD claim.

51.     In a letter dated July 30, 2012, Rodrigues timely appealed both his STD and LTD denials in one letter (the "First STD Appeal" and the "First LTD Appeal").

52.     On August 8, 2012, DCM Erika Cruz acknowledged that Rodrigues was appealing both his STD and LTD benefits denials.

53.     Regarding the STD claim, Liberty's Lisa Sullivan began handling the STD appeal and ultimately denied Rodrigues for a second time in a letter dated September 25, 2012 (the "Second STD Denial"). This time, the denial only addressed STD benefits. Rodrigues timely appealed in a letter dated November 23, 2012 (the "Second STD Appeal"), and his STD claim then advanced to a second-level review directly with USAA.

54.     While the STD appeal moved forward, the LTD appeal review was inexplicably delayed for several months. The Appeals Review Unit (the "ARU") received an appeal referral on August 8, 2012 from DCM Erika Cruz, but as of September 6, 2012, "[the LTD claim] was referred to [the ARU] on 08/08/12 but [the] LTD claim [] had no more notes, so [Ms. Cruz] was not sure if it has actually been referred."  This was the final log note provided to Rodrigues before a log note stating that the LTD appeal had been referred to ARU on December 8, 2012. On December 11, 2012, Rodrigues' LTD appeal was assigned to Appeal Review Consultant ("ARC") Charles Johnson.

55.     On December 17, 2012, DCM Erika Cruz received a phone call from USAA about Rodrigues' STD and LTD claims. USAA asked if they were to overturn the STD claim whether that would be taken into consideration on the LTD claim. Ms. Cruz said that it would not, because "there is no medical to support [total disability] for the LTD [claim]."

56.     USAA reversed Liberty's denial of STD benefits for the period of February 1, 2012 through February 21, 2012, granting Rodrigues the maximum 26 weeks of STD benefits (the "STD Approval").

57.     In a letter dated January 28, 2013, Liberty upheld its LTD denial (the "Second LTD Denial"), and in that letter, alleged that Rodrigues did not submit his LTD appeal until November 23, 2012; however, this is directly contradicted by Liberty's own log notes, where it acknowledged that Rodrigues appealed both STD and LTD denials in a letter dated July 30, 2012. The November 23, 2012 appeal was the second-level appeal sent directly to USAA with regards to Rodrigues' STD benefits.

58.     Liberty did not provide Rodrigues with any log notes for the time period of October 11, 2012- December 8, 2012 regarding either his STD or LTD claims, and the LTD log notes are absent from September 6, 2012 – December 8, 2012. However, correspondence and phone calls still occurred during these timeframes.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

59.     On February 6, 2013, USAA called Charles Johnson, letting him know that Rodrigues was not pleased with the LTD denial and did not believe that Liberty looked at all of the evidence. USAA let Mr. Johnson know that Rodrigues would be calling to discuss the January 28, 2013 denial.  Mr. Johnson stated that he "would be more than happy to discuss the appeal decision with [Rodrigues]."

60.     On February 7, 2013, Rodrigues and Mr. Johnson spoke about the denial. Mr. Johnson explained: "WE TYPICALLY PROVIDE ONE LEVEL OF APPEAL REVIEW - HOWEVER - IF HE FEELS THERE IS ADDITIONAL INFORMATION THAT IS NOT THERE OR NOT CONSIDERED - WRITE A LETTER OUTLINING HIS CONCERNS AND WE WILL GO OUTSIDE THE NORM AND ALLOW HIM ADDITIONAL TIME TO SUBMIT THOSE RECORDS AND WE WILL REVIEW IT - URGED HIM THAT INFORMATION SHOULD BE SUBMITTED AS SOON AS POSSIBLE..." (emphasis in original).  Mr. Johnson did not enter this log note until March 28, 2013, and he did not send Rodrigues a letter notifying him of his right to a second-level appeal according to this conversation, or of his right to request his claim file; instead, Mr. Johnson urged Rodrigues to submit information "as soon as possible."

61.     Following Mr. Johnson's oral direction, Rodrigues sent a "second" appeal in a letter dated February 19, 2013 and included additional medical records and information (the "Second LTD Appeal").

62.     There is an absence of chronological log notes after Mr. Johnson's February 6, 2013 conversation with USAA until March 20, 2013. Mr. Johnson entered a log note on March 28, 2013 to record his February 7, 2013 conversation with Rodrigues, his February 28, 2013 receipt of information from Rodrigues, and his conversation with Rodrigues from March 20, 2013.

63.     There is no indication that any activity took place regarding the appeal until March 20, 2013 when Rodrigues called for an update from Mr. Johnson.

64.     After Rodrigues' call, on March 20, 2013, Mr. Johnson requested that a nurse case manager ("NCM") review Rodrigues' file. It was the same NCM, Jennifer Sullivan, who reviewed Rodrigues' LTD claim to deny benefits in the January 28, 2013 denial. On March 26, 2013, he also requested that Liberty's Special Investigations Unit ("SIU") conduct an "ISO Claim Search;" this included a database search and social network search of Rodrigues.

65.     Based on the NCM review and SIU, Mr. Johnson upheld the previous denials in a letter dated April 2, 2013 (the "Third LTD Denial"). Mr. Johnson and NCM Jennifer Sullivan handled both the January 28, 2013 and April 2, 2013 denials.

66.     On information and belief, no manager reviewed Mr. Johnson's April 2, 2013 denial prior to it being sent to Rodrigues.

67.     Rodrigues called Liberty and found out about the Third LTD Denial on April 8, 2013. Rodrigues was upset. Upon Rodrigues' request to speak with a manager, Mr. Johnson transferred Rodrigues to Heather Heins, who spoke with Rodrigues on April 8, 2013. She said she would review his LTD claim by the next business day and volunteered to send him a copy of his file, as well.

68.     Heather Heins called Rodrigues on April 9, 2013, explaining that she agreed with the April 2, 2013 denial. Rodrigues then asked to speak with her manager, who Ms. Heins indicated to be Sue LaPierre. Ms. Heins said she would have Ms. LaPierre call Rodrigues. She also agreed again to send him a copy of his claim file and policy and stated that Liberty does not communicate via email. Ms. Heins refused to tell Rodrigues the name of Ms. LaPierre's manager.

69.     Ms. LaPierre called Rodrigues on April 16, 2013. She documented the following about her conversation with Rodrigues: "WE HAD OFFERED HIM A 2ND LEVEL APPEAL WHICH HE HAS NOT PURSUED.  HE DID RECEIVE A COPY OF HIS FILE AND POLICY.  AFTER DISCUSSING HE AGREED THAT HE WILL REVIEW FILE AND DETERMINE IF THERE IS ADDITIONAL INFO HE CAN

PROVIDE AND THAT WE WOULD REVIEW AND DETERMINE NEXT STEPS.
HIS PRIMARY COMPLAINTS WERE THAT ALL REVIEWS WERE PAPER AND I
ADVISED THAT IF WE DO RECEIVE FURTHER INFO WE WILL DETERMINE IF
IT WOULD BE BENEFICIAL TO DO[] AN IME, BUT THERE WAS NO
GUARANTEE." (emphasis in original).

70.     Contrary to Ms. LaPierre's statement, Rodrigues had already pursued a
second-level appeal as instructed by Mr. Johnson.

71.     Nevertheless, based on Ms. LaPierre's instruction, Rodrigues submitted
another appeal, which Liberty received May 17, 2013 (the "Third LTD Appeal"). This
constituted at least Rodrigues' third appeal on his LTD claim.

72.     Rodrigues was led to believe by Liberty that, if he kept appealing, they
would possibly reverse its LTD denial. He has recorded voice messages from Liberty
that evidence the fact that Liberty encouraged Rodrigues to maintain hope about the
appeals process and to continue participation in appeals.

73.     Liberty issued its final denial in a letter dated July 11, 2013 (the "Fourth
and Final LTD Denial"), more than 45 days after its receipt of Rodrigues' third appeal.

74.     Heather Heins, who reviewed Mr. Johnson's April 2, 2013 denial,
reviewed information relating to Liberty's Fourth and Final LTD Denial.

75.     Liberty called Rodrigues to tell him about the Fourth and Final LTD
Denial, causing Rodrigues feelings of despair and hopelessness. The appeals process had
been emotionally taxing and had drawn out for nearly a year and a half. During that time,
Rodrigues medical conditions had only gotten worse, and he grew increasingly more
financially destitute. Liberty knew all of this information in issuing the Fourth and Final
LTD Denial.

76.     On information and belief, Liberty never intended to approve Rodrigues'
LTD Claim. Instead, it encouraged Rodrigues to consent to additional appeals with the

**CALDWELL & OBER, P.L.L.C.**
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

intent to conceal and/or justify its own failures, because it had repeatedly failed to timely and properly handle Rodrigues' LTD claim.

77.     Rodrigues exhausted his administrative remedies under the Plan before timely bringing this lawsuit.

**COUNT I**
**(Recovery of Plan Benefits)**
**(The Plan, USAA, and Plan Administrator)**

78.     All previous paragraphs are incorporated by reference.

79.     The Plan is an Employee Welfare Benefit Plan as defined by ERISA. Defendants are the Plan, Plan administrators or Plan fiduciaries of the Plan under ERISA.

80.     The Plan represents LTD coverage and a promise to provide LTD benefits until Rodrigues is no longer disabled under the terms of the LTD Program.

81.     Under the LTD Program, Rodrigues is disabled when, because of an injury or sickness, "(1) [he] cannot perform each of the material and substantial duties of [his] occupation; and (2) after benefits have been paid for 24 months, [he] cannot perform each of the material and substantial duties of any gainful occupation for which [he] is reasonably fitted by training, education, experience, age, or physical and mental capacity; or (3) is Partially Disabled." "'Partial Disability' or 'Partially Disabled' means, as a result of the Injury or Sickness, the Participant is: (1) able to perform one or more, but not all, of the material and substantial duties of his own or any other occupation on an Active Employment or part-time basis; or (2) able to perform all of the material and substantial duties of his own or any other occupation on a part-time basis."

82.     Rodrigues is unable to definitively ascertain the appropriate definition of disability, because the Plan documents have conflicting information or are missing language.

83.     Rodrigues became disabled in 2011 and continues to be disabled under the Plan, the LTD Program, and the Policy. He is unable to perform the material and

substantial duties of his own occupation or any other gainful occupation.  He has claimed the benefits under the Plan to which he is entitled.

84.     Rodrigues's medical conditions never improved and, in fact, have worsened since leaving work in 2011.

85.     Given Rodrigues' severe pain and cognitive dysfunction, he cannot perform the material and substantial duties of his occupation or any gainful occupation, regardless of its sedentary nature.

86.     Rodrigues reasonably expected that his conditions met the requirements of Disability as defined by the Plan for LTD benefits, and that he would receive benefits and COLA increases under the Plan until age 65 or until he was no longer disabled. Monthly benefits payable under the Plan are adjusted and prorated for COLA increases equivalent to those received by retirees under the Retirement Plan and are not subject to monthly maximum amounts under the LTD Plan.

87.     Liberty's determination that Rodrigues was not entitled to benefits was influenced by an improper conflict of interest.

88.     Liberty improperly inserted terms into the Plan that substantially altered the definition of disability under which Rodrigues is entitled to benefits.

89.     Liberty improperly demanded "objective medical evidence" and failed to consider other factors including, for example, the opinions of treating and examining physicians, Rodrigues' credibility, whether reported activity is consistent with the symptoms and limitations, whether Rodrigues has responded to and cooperated in his treatment, and whether the symptoms reported are anatomically implausible.

90.     Liberty improperly failed to consider Rodrigues' subjective complaints, as well as the effect of his medications, in determining whether he is totally disabled under the Plan.

91.     Liberty denied Rodrigues a full and fair review, in part by failing to initiate and complete a timely review of his LTD claim and by failing to provide Rodrigues with all of the evidence it relied on in denying LTD benefits.

92.     Liberty had Mr. Johnson handle and decide both the January 28, 2013 and April 2, 2013 denials of Rodrigues' appeal.  DCM Cruz authored both of the First Denials. This deprived Rodrigues of a full and fair review and was a manifestation of Liberty's conflict of interest.

93.     Liberty used the wrong job description, considering Rodrigues an administrative assistant or customer service representative.

94.     The Plan is required, as part of the appeal process, to establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination under a full and fair review. 29 C.F.R. § 2560.503-1(h)(1).

95.     Rodrigues was not given any meaningful instruction on how to perfect his claim, nor was he told what additional information would help Liberty in its decision-making. Liberty wrongfully denied Rodrigues' disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132. For instance, Mr. Johnson never told Rodrigues what information would be beneficial to a second appeal, and Ms. Heins stated Rodrigues could submit "anything and everything he wanted considered for his appeal."

96.     Whenever Rodrigues requested his claim file, Liberty failed to provide him with relevant documents as required under ERISA. When Rodrigues requested his claim file, Liberty responded in a letter dated September 30, 2013 by stating:

> As stated above, we have provided you with an entire copy of Mr. Rodrigues's claim file as well as a copy of USAA's Long Term Disability Policy. Much of this information is over and above the "pertinent claim file documents upon which the denial of benefits was based" that ERISA requires. We are unable to respond to your overbroad requests for documentation related to internal notes,

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

> recorded telephone conversations, administrative processes, internal rules/guidelines, third-party vendor contracts, etc. This information is not contained in Mr. Rodrigues's claim file and was not considered by Liberty Life in our review of Mr. Rodrigues's claim. As such, this information cannot be provided.

In doing so, Liberty cited to outdated ERISA requirements and withheld relevant documents.

97.     Liberty acted arbitrarily and capriciously when it selectively reviewed Rodrigues' medical records, relying only on those portions of his medical records that supported a denial of benefits. For example, when NCM Jennifer Sullivan completed her file review on January 7, 2013, she ignored relevant information about Rodrigues' medical conditions and discounted his treating providers' assessments without explanation.

98.     Liberty's procedural irregularities include but are not limited to: all correspondence between Liberty and the independent medical examiners, peer reviewers, and medical reviewers/consultants; improperly delegating duties to third parties; relying on an improper definition of disability; failing to correctly interpret Rodrigues' job duties; behaving as an adversary bent on denying the claim; impermissibly "cherry picking" only evidence favorable to Liberty from Rodrigues' claim file; failing to describe the materials that Rodrigues would need to provide to Liberty in order to substantiate his disability; implementing unfair and inconsistent claims procedures; and failing to act in Rodrigues' best interests.

99.     Defendants failed to investigate Rodrigues' claim adequately, including its failure to conduct an in-person medical evaluation, which would have been beneficial to a full and fair review of Rodrigues' claim.

100.    Upon information and belief, the peer reviewers were financially incentivized to deny Rodrigues's claim and acted with bias.

101.    Liberty unreasonably selected and used reviewing physicians who were without appropriate knowledge, training, and experience to assess Rodrigues' disabling conditions.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

-15-

102.    Liberty unreasonably failed to ensure that peer reviewers and its NCMs provided unbiased assessments for purposes of its claims administration.

103.    Liberty and its employees who handled Rodrigues' STD and LTD claims have a history of bias against claimants and are financially incentivized to deny claims under the Plan at the transition from STD to LTD benefits.

104.    Liberty failed to maintain accurate and reliable internal log notes. Rodrigues is informed and believes that the claim file is missing important information and has been altered by Liberty prior to its disclosure to Rodrigues.

105.    The peer reviewers and NCMs arbitrarily reached their opinions based on insufficient evidence or investigation.

106.    Liberty's physician reviewers and/or NCMs never attempted or failed to speak with Rodrigues' treating physicians. And when they did attempt to contact treating physicians but were unsuccessful, they never let Rodrigues know that, so that he could assist in having his treating physicians contact Liberty. Instead, Liberty would just deny Rodrigues' claim without adequate information.

107.    None of Liberty's reviewing physicians and/or NCMs ever set forth any substantive reasons why Rodrigues' doctors' opinions that he could not work were incorrect.

108.    Liberty failed to explain why it credited the physician reviewers over Rodrigues' treating physicians.

109.    The peer reviewers were not given the Plan or other important records for reaching its decision that Rodrigues could perform sedentary work.

110.    The peer reviewers never spoke to Rodrigues, and they never conducted an in-person evaluation of him.

111.    Liberty intentionally and in bad faith withheld relevant information in violation of ERISA, such as internal guidelines and other information Rodrigues requested on appeal. It failed to apprise him of his appeal rights.

112.    Liberty handled Rodrigues's claim in an adversarial manner and failed to administer the Plan prudently. For instance, Liberty found that, because Rodrigues attended his daughter's graduation, he was being dishonest about his capabilities and general level or activity. It also questioned his symptoms because he prepared an "articulate appeal:" "WITH RESPECT TO THE CLMT S REPORTED COGNITIVE DEFICITS AND *BRAIN FOG*, HIS 19 PAGE WELL-ORGANIZED, ARTICULATE LETTER OF APPEAL ARGUES AGAINST ANY DIFFICULTY WITH FOCUS, CONCENTRATION, OR ABILITY TO PERSIST AT GOAL-ORIENTED WORK. THERE IS NO COGNITIVE TESTING {MENTAL STATUS EXAM OR NEUROPSYCHOLOGICAL EXAM} IN THE RECORDS DEMONSTRATING ANY COGNITIVE IMPAIRMENT." (emphasis in original). The testing identified in this quote as potentially helpful was never communicated to Rodrigues as a way to perfect his claim.

113.    Despite the coverage of Rodrigues's disability, Defendants have improperly denied LTD benefits to Rodrigues in breach of the Plan.  This breach was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence and was clearly erroneous.

114.    Rodrigues has exhausted his administrative remedies.

115.    Defendants are not entitled to an arbitrary and capricious standard of review of their decision in this action, so Rodrigues' claims are entitled to *de novo* review with a bench trial on the record. Liberty's numerous procedural errors rise to the level of a "wholesale and flagrant" violation of ERISA, entitling Rodrigues to *de novo* review.

116.    Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal and state common law, Rodrigues is entitled to recover all benefits due under the terms of the Plan, and to enforce his rights under the Plan.

-17-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

117.     Rodrigues is entitled to seek any and all relief allowed pursuant to ERISA, including equitable remedies, in an effort to enforce his rights under the Plan.

118.     Rodrigues is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

119.     Rodrigues' claims are subject to *de novo* review.

120.     Upon information and belief, Rodrigues may be entitled to additional benefits from USAA as a disabled employee including, but not limited to, health insurance, life insurance, supplemental LTD benefits, and retirement/pension credits.

121.     Pursuant to 29 U.S.C. § 1132(g), Rodrigues is entitled to recover his attorneys' fees and costs incurred herein from Defendants.

122.     Rodrigues is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid.

### COUNT II
### (Breaches of Fiduciary Duty)
### (USAA and the Plan Administrator)

123.     All previous paragraphs are incorporated by reference.

124.     On information and belief, USAA considers the Plan to be the governing plan document of all Constituent Benefits Programs.

125.     The Plan Administrator and USAA are named fiduciaries of the Plan.

126.     The STD and LTD Programs are governed by the terms of the Plan above any other document.

127.     USAA paid insurance premiums for the Policy from its general assets and from participant contributions.

128.     The Plan Administrator has discretion to construe and interpret the Plan and the Constituent Benefits Programs.

129.    The Plan defines a TPA as an "entity operating under a TPA Agreement to provide administrative services with respect to any benefits offered under one or more of the Constituent Benefit Programs."

130.    "Except as may otherwise be specifically provided in the applicable Constituent Benefit Program Document, in the case of any Insured Constituent Benefit Program, the applicable Insurer is hereby delegated the powers and duties of the Plan Administrator with respect to the final determination of eligibility for benefits and the amount of such benefits, including, without limitation, the discretion to interpret the Plan provisions with respect to such Insured Constituent Benefit Program. Upon designation and written acceptance of such delegation, employment, or authorization, the Plan Administrator will have no liability for the acts or omissions of any such delegate as long as the Plan Administrator does not violate its fiduciary responsibility in making or continuing such delegation. All delegations of fiduciary responsibility will be reviewed periodically by the Plan Administrator and will be terminable upon such notice as the Plan Administrator in its discretion deems reasonable and prudent under the circumstances."

131.    Under the Plan, each fiduciary must discharge his duties solely in the interest of Participants and for the exclusive purpose of providing benefits to Participants and in accordance with the Plan.

132.    The Plan Administrator and USAA knew or should have known that Liberty handled claims against the best interests of its employees and not pursuant to the Plan.

133.    On information and belief, the Plan Administrator did not properly designate and Liberty did not accept in writing the delegation of Plan Administrator responsibilities.

134.    It is unclear what administrative responsibilities have been delegated by the Plan Administrator to Liberty, as the Plan Administrator has failed to produce in

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

-19-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

response to written requests any TPA Agreements or other documents demonstrating a delegation of authority to Liberty.

135.    The Plan Administrator should clarify what administrative responsibilities, if any, it has delegated to other entities such as Liberty.

136.    On information and belief, the Plan Administrator did not periodically review Liberty's actions as a delegated fiduciary under the Plan.

137.    On information and belief, the Plan Administrator's failure to periodically review Liberty's actions as a delegated fiduciary under the Plan was unreasonable and constituted a breach of fiduciary duty.

138.    On information and belief, if the Plan Administrator did periodically review Liberty's actions as a delegated fiduciary under the Plan, then its periodic review was unreasonable and constituted a breach of fiduciary duty.

139.    On information and belief, USAA and the Plan Administrator established "service level objectives" for Liberty, which did not reasonably monitor Liberty's actions or protect Plan participants.

140.    On information and belief, the Plan Administrator acted unreasonably and imprudently by not terminating Liberty's delegation of fiduciary authority.

141.    The Plan Administrator and USAA breached its fiduciary duties to Rodrigues, the Plan, and other Plan participants.

142.    On information and belief, the Plan Administrator is liable for Liberty's actions, because the Plan Administrator violated its fiduciary obligations by continuing Liberty's delegation as Plan Administrator and/or by failing to protect Plan participants from Liberty's conflicted and adversarial claims handling.

143.    On information and belief, USAA knows or should know that Liberty improperly handles STD claims in an effort to avoid financial liability on LTD claims.

144.    On information and belief, in exchange for the opportunity to serve in the dual capacity of TPA and insurer, Liberty and USAA have negotiated lower premiums.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

145.   Defendants consciously, unreasonably, intentionally and without justification breached their fiduciary duties to Rodrigues with respect to their administration of the Plan by violating ERISA regulations and the Plan in its failure to provide a full and fair review.

146.   Defendants and Liberty failed to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a). Therefore, Defendants' breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a) and all other ERISA regulations. USAA and the Plan Administrator acted imprudently by failing to oversee Liberty's claims administration.

147.   Rodrigues was harmed by Defendants' breaches of their fiduciary duties.

148.   Rodrigues is entitled to equitable relief for Defendants' breach of their fiduciary duties, including for the breaches of fiduciary duties committed by any agents or third parties for Defendants.

149.   Liberty was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld benefits for its own profit.

150.   Because Liberty breached its fiduciary duties, Rodrigues was actually harmed.

151.   Rodrigues relied on the Plan to his detriment, believing that he was entitled to LTD benefits pursuant to the provisions of the Plan. He further relied on Liberty's representations that, if he participated in additional appeals, Liberty would act in good faith and in his best interests.

152.   Liberty and Defendants must return any benefits resulting from its breach to Rodrigues.

153.   As a direct and proximate result of the breaches of fiduciary duty, Rodrigues suffered actual financial harm and incurred financial expense.

154.     Rodrigues is entitled to injunctive and/or mandamus relief under 29 U.S.C. § 1132(a)(2)-(3). He is entitled to enjoin any act or practice by Defendants that violate ERISA or the Plan, and/or he is entitled to see other appropriate equitable relief that is traditionally available in equity. Because of Liberty's breach of fiduciary duties to Plan participants, and because of the Plan Administrator's failure to appropriately monitor Liberty and protect Plan participants and beneficiaries from Liberty's breaching conduct, the Plan Administrator and USAA should be enjoined from employing Liberty as both its TPA for STD claims and insurer on LTD claims. The Plan Administrator should further be required to implement appropriate procedures in oversight of Liberty and/or any other insurers under of STD and LTD benefits under the Plan, which will maintain accountability for the administrative responsibilities it delegates under the Plan.

## COUNT III
### (Breaches of Fiduciary Duty)
### (Liberty)

155.     All previous paragraphs are incorporated by reference.

156.     Rodrigues' STD benefits were self-insured by USAA, whereas his LTD benefits were fully insured by Liberty.

157.     In 2009, USAA paid Liberty $5,692,417 in premiums for LTD coverage and approximately 20,447 persons were covered as of the end of the policy year, December 31, 2009.

158.     In 2010, USAA paid Liberty $6,094,162 in premiums for LTD coverage and approximately 21,319 persons were covered as of the end of the policy year, December 31, 2010.

159.     In 2011, USAA paid Liberty $6,715,877 in premiums for LTD coverage and approximately 22,733 persons were covered as of the end of the policy year, December 31, 2011.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

160.    In 2012, USAA paid Liberty $6,161,144 in premiums for LTD coverage and approximately 24,536 persons were covered as of the end of the policy year, December 31, 2012.

161.    In insurance, the 'loss ratio' is the ratio of total losses incurred (both paid and reserved) in claims plus adjustment expenses divided by the total premiums earned. The 'target loss ratio' refers to the loss ration necessary to fulfill the insurer's profitability goal. 'Reserves' are estimates of the money that Liberty has to pay over the duration of a claim. Liberty must set aside proper reserves on fully insured claims.

162.    In 2012, the Plan paid Liberty less in premiums than it had in 2011, but the covered persons under the Plan increased in 2012. The anticipated and received premiums impact Liberty's estimation of its financial liability under a Plan.

163.    On information and belief, USAA negotiated lower premiums with Liberty, which affected Liberty's "target loss ratio," thereby incentivizing Liberty to deny more LTD claims under the Plan than it had previously.

164.    To the extent that the Plan Administrator did delegate Liberty with fiduciary obligations as Plan Administrator, then Liberty is a fiduciary of the Plan. Alternatively, Liberty is a named fiduciary of of the Plan.

165.    Rodrigues is informed and believes that, in order to account for income and future liability for fully insured claims, Liberty has an Actuarial Department that establishes "reserves" for fully insured claims.

166.    Upon information and belief, Liberty defines 'reserves' as an estimate of the liability that it will need to pay out over the course of a claim's duration, which is calculated based on the date that benefits first become due until a claim closes.

167.    Upon information and belief, Liberty's net income in any given period, including on a monthly basis, is directly influenced by changes to its reserves.

168.    Rodrigues is informed and believes that the number and status of claims directly influences Liberty's reserves.

-23-

169.    On information and belief, Liberty did not set aside proper reserves for paying claims under the Plan and did not use appropriate actuarial standards and/or reliable risk factors for calculating reserves on claims under the Plan.

170.    Upon information and belief, Liberty never approved Rodrigues' LTD claim, so it never set aside loss reserves for the claim. By doing this, Liberty was able to avoid reporting reserves that would have negatively impacted the company's net income reports.  Alternatively, Liberty calculated and set aside reserves on Rodrigues' claim based on unreliable information.

171.    Liberty is informed and believes that Liberty employees such as Mr. Johnson and DCM Cruz are educated on reserves and the impact of their claims decisions on Liberty's profitability. Liberty maintains and provides to its employees information in the form of reserve reports and net income reports.

172.    Liberty breached its fiduciary duties to Rodrigues by mishandling his LTD claim, failing to render timely decisions, and knowingly misrepresenting Rodrigues' Second STD Appeal to be his First LTD Appeal. It further breached its fiduciary duties by offering Rodrigues additional appeal opportunities, which it did so only in an effort to conceal and/or perfect its own administrative shortcomings on the claim.

173.    On other claims under the Plan, Liberty employs entirely different appeal procedures. For instance, in another case currently before the Arizona District Court (*Braun v. USAA, et. al.* CV-01923-PHX-DGC), Liberty is alleged to have refused a Plan participant an additional 60 days beyond the initial 180 days for preparing an appeal with the assistance of legal counsel. In Rodrigues' claim, however, where legal counsel did not represent Rodrigues, Liberty encouraged Rodrigues to submit multiple appeals and issued at least four denials before closing the appeals process. This inconsistent claims handling is a breach of fiduciary duty to not only Rodrigues but also to the Plan.

-24-

174.    In its dual capacity as TPA and insurer, Liberty breached its fiduciary duties by coordinating its STD and LTD claims administration under the Plan in an effort to avoid liability on LTD claims.

175.    To the extent that Liberty acted as a fiduciary to determine benefits eligibility under the Plan, Liberty breached its fiduciary obligations to Rodrigues.

176.    All of Liberty's procedural irregularities further constitute breaches of its fiduciary duty to Rodrigues.

177.    Rodrigues requested disclosure pursuant to ERISA. To the extent Liberty acted as a fiduciary and/or was the designated Plan Administrator, it refused to provide documents that Rodrigues was entitled to under ERISA. Liberty's failure to provide all relevant documents to Rodrigues constituted a breach of its fiduciary duties in violation of ERISA. Liberty's failure to provide and reasonably apprise Rodrigues of his rights on appeal was improper and compromised Rodrigues' right to a full and fair review.

178.    Defendants consciously, unreasonably, intentionally and without justification breached their fiduciary duties to Rodrigues with respect to their administration of the Plan by violating ERISA regulations and the Plan in its failure to provide a full and fair review.

179.    Defendants and Liberty failed to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a). Therefore, Liberty breached its fiduciary duties pursuant to 29 U.S.C. § 1132(a) and all other ERISA regulations.

180.    Rodrigues is entitled to equitable relief that cannot be obtained through his benefits claim under 29 U.S.C. § 1132(a)(1)(B).

181.    Rodrigues is entitled to enjoin any act or practice by Liberty that violates ERISA or the Plan, and/or he is entitled to see other appropriate equitable relief that is traditionally available in equity. As such, Rodrigues seeks this Court to enjoin Liberty

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

from applying inconsistent appeals procedures in violation of the Plan and ERISA and from using the same employees to simultaneously handle STD and LTD claims, as well as multiple appeals. It should further be enjoined from incentivizing employees to handle claims in an effort to avoid financial liability, and Liberty should be required to implement guidelines that protect Plan participants from Liberty's structural conflict of interest. Further discovery into Liberty's conflict and its impact on claims handling is needed for Rodrigues to articulate exactly what injunctions are most appropriate.

182.    ERISA "does not elsewhere adequately remedy" the injuries caused to Rodrigues by Liberty's breach of fiduciary duty violations.

183.    Pursuant to 29 U.S.C. § 1132(g), Rodrigues is entitled to recover his attorneys' fees and costs incurred herein from USAA and the Plan for bringing claims under 29 U.S.C. § 1132(a)(2)-(3).

184.    Upon information and belief, separate equitable relief may be appropriate under 29 U.S.C. § 1132(a)(3) beyond injunctive relief, because 29 U.S.C. § 1132(a)(1)(b) is inadequate for recovery.

185.    Rodrigues is entitled to equitable relief for Defendants' breach of their fiduciary duties, including for the breaches of fiduciary duties committed by any agents or third parties for Defendants.

186.    Liberty was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld benefits for its own profit.

187.    Because Liberty breached its fiduciary duties, Rodrigues was actually harmed.

188.    Rodrigues relied on the Plan to his detriment, believing that he was entitled to LTD benefits pursuant to the provisions of the Plan. He further relied on Liberty's representations that, if he participated in additional appeals, Liberty would act in good faith and in his best interests.

-26-

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ  85016
(602) 277-1745

189.   Liberty and Defendants must return any benefits resulting from its breach to Rodrigues.

190.   As a direct and proximate result of the breaches of fiduciary duty, Rodrigues suffered actual financial harm and incurred financial expense.

191.   WHEREFORE, Rodrigues prays for entry of judgment against Defendants as follows:

A.   For all past and future LTD benefits under the terms of the Plan;

B.   Clarifying and determining Rodrigues's rights to future benefits under the terms of the Plan;

C.   For injunctive relief against Defendants; requiring compliance with ERISA regulations and Plan terms, including but not limited to: 1) enjoining USAA and the Plan Administrator from employing Liberty as both its TPA for STD claims and insurer on LTD claims; 2) requiring the Plan Administrator to implement appropriate procedures in his oversight of Liberty and/or any other insurers of the company's STD and LTD benefits under the Plan; 3) enjoining Liberty from applying inconsistent appeals procedures in violation of the Plan and ERISA; 4) enjoining Liberty companywide from reliance on and citation to outdated ERISA regulations, such as its disclosure of "pertinent information" to Rodrigues; 5) enjoining Liberty from using the same employees to simultaneously handle STD and LTD claims and appeals under the Plan; 6) enjoining Liberty from any conduct or compensation structures that incentivize its employees and/or contractors to handle claims with the goal of avoiding financial liability; 7) requiring Liberty to implement guidelines or procedures that protect Plan participants from Liberty's structural conflict of interest; and 8) for other injunctive relief to be determined following further discovery into Liberty's conflict of interest, Defendants' relationships with one another, and the Plan Administrator's delegation of his administrative responsibilities.

CALDWELL & OBER, P.L.L.C.
1940 E. Camelback Rs., Ste. 150
Phoenix, AZ 85016
(602) 277-1745

D.     For all other equitable relief that is proper as a result of Defendants' breach of fiduciary duties, including but not limited to equitable surcharge, disgorgement, and/or other appropriate equitable remedy(ies) for Defendants' breaches of fiduciary duty violations under ERISA;.

E.     For an award of Rodrigues's attorneys' fees and costs incurred herein;

F.     For an award of prejudgment interest on benefits and other equitable relief at the highest legal rate until paid; and

G.     For such and further relief as the Court deems just and reasonable.


Dated this 11th day of July, 2014.

                         CALDWELL & OBER, P.L.L.C.


                         By: s/ Erin Ronstadt
                              Erin Ronstadt
                              Kristin Cox
                              Attorneys for Plaintiff

-28-